UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN JAMES PARISE, JR., | No. 2:14-cv-0022 KJN PS |
| Plaintiff, | |
| v. | ORDER |
| UNION PACIFIC RAILROAD, | |
| Defendant. | |

INTRODUCTION

Plaintiff John James Parise, Jr., proceeding without counsel, commenced this action on January 6, 2014, and paid the filing fee. (ECF No. 1.)[1] Thereafter, on March 12, 2014, defendant Union Pacific Railroad Company ("UPRR") filed the instant motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 8.) The motion was originally set for hearing on May 1, 2014, but the hearing was subsequently continued to May 8, 2014, due to the court's own unavailability. (ECF Nos. 8, 9.) On March 24, 2014, plaintiff filed an opposition to the motion to dismiss, and on April 29, 2014, UPRR filed a reply brief. (ECF Nos. 10, 14.)

---

[1] All parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) (ECF Nos. 4, 17), and the action was referred to the undersigned for all further proceedings and entry of final judgment.

1

At the hearing, plaintiff appeared representing himself, and Melissa Greenidge appeared on behalf of UPRR.  After considering the parties' written briefing, the parties' oral argument, the court's record, and the applicable law, the court grants UPRR's motion to dismiss and dismisses the action with prejudice.

BACKGROUND

The background facts are taken from plaintiff's original complaint, unless otherwise noted.  (See ECF No. 1.)  In his complaint, plaintiff claims that he worked for UPRR from 1971-2014, but was recently forced into early retirement due to the severity of back injuries he allegedly sustained while working as a locomotive engineer for UPRR.  Plaintiff purportedly learned of his back injuries after receiving the results of an MRI performed on July 17, 2013.  According to plaintiff, he had been dislodged from his seat many times due to UPRR's "rough riding locomotives."  Plaintiff's complaint contends that UPRR was negligent in its failure to (1) provide a safe work place by installing seat belts in the locomotives and (2) inform, warn, or advise plaintiff regarding the severity of "rough riding locomotives" and the hazards of riding in them.  Plaintiff seeks damages in excess of $750,000.00 based on lost earnings, medical expenses, physical impairment, physical pain and suffering, and mental anguish.

Although plaintiff's complaint suggests that he asserts a federal claim conferring federal question jurisdiction under 28 U.S.C. § 1331, the complaint does not specify exactly what is that federal claim.  In its motion to dismiss, UPRR construes plaintiff's complaint as asserting a claim under the Federal Employers Liability Act, 45 U.S.C. §§ 51 et seq. ("FELA").  45 U.S.C. § 51 provides, in part, that:

> Every common carrier by railroad while engaging in…[interstate or foreign commerce]…shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce…for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51.  The FELA provides for concurrent jurisdiction between federal and state courts over claims arising under the statute.  45 U.S.C. § 56.  UPRR's construction of plaintiff's

complaint appears consistent with plaintiff's own reference to the FELA in the venue section of the complaint. (ECF No. 1 at 3 [referencing 45 U.S.C. § 56].) Moreover, the Ninth Circuit Court of Appeals has recognized "the well-settled principle that the FELA provides the sole and exclusive remedy for injured employees of railroad carriers engaged in interstate commerce." Wildman v. Burlington Northern Railroad Co., 825 F.2d 1392, 1395 (9th Cir. 1987). Accordingly, the court likewise liberally construes plaintiff's complaint as asserting a negligence claim under the FELA, and proceeds to consider UPRR's motion to dismiss.

LEGAL STANDARD

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the pleadings set forth in the complaint. Vega v. JPMorgan Chase Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009). Under the "notice pleading" standard of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and plain statement" of plaintiff's claims showing entitlement to relief. Fed. R. Civ. P. 8(a)(2); see also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In considering a motion to dismiss for failure to state a claim, the court accepts all of the facts alleged in the complaint as true and construes them in the light most favorable to the plaintiff. Corrie v. Caterpillar, Inc., 503 F.3d 974, 977 (9th Cir. 2007). The court is "not, however, required to accept as true conclusory allegations that are contradicted by documents referred to in the complaint, and [the court does] not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Paulsen, 559 F.3d at 1071. The court must construe a *pro se* pleading liberally to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them if it appears at all possible that the plaintiff can correct the defect. See Lopez v.

1  Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica Police
2  Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th
3  Cir. 2010) (stating that courts continue to construe *pro se* filings liberally even when evaluating
4  them under the standard announced in Iqbal).

5       In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the court "may generally
6  consider only allegations contained in the pleadings, exhibits attached to the complaint, and
7  matters properly subject to judicial notice." Outdoor Media Group, Inc. v. City of Beaumont, 506
8  F.3d 895, 899 (9th Cir. 2007) (citation and quotation marks omitted). Although the court may not
9  consider a memorandum in opposition to a defendant's motion to dismiss to determine the
10 propriety of a Rule 12(b)(6) motion, see Schneider v. Cal. Dep't of Corrections, 151 F.3d 1194,
11 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition papers in deciding
12 whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir.
13 2003).

14 DISCUSSION

15      Under the FELA, "[a] railroad has a duty to use reasonable care in furnishing its
16 employees with a safe place to work." Atchison, Topeka & Santa Fe Railway Co. v. Buell, 480
17 U.S. 557, 558 (1987). Courts liberally construe the FELA to further Congress's remedial goal.
18 Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 543 (1994). Nevertheless, the FELA is not a
19 worker's compensation statute. Id. "We have insisted that [the] FELA does not make the
20 employer the insurer of the safety of his employees while they are on duty. The basis of his
21 liability is his negligence, not the fact that injuries occur." Id. (internal quotation marks and
22 citations omitted).

23      "As a general negligence statute [the] FELA neither prohibits nor requires specific
24 conduct by a railroad." Waymire v. Norfolk & Western Railway Co., 218 F.3d 773, 775 (7th Cir.
25 2000). However, two other federal statutes – the Locomotive Inspection Act, 49 U.S.C. §§ 20701
26 et seq. ("LIA") (formerly known as the Boiler Inspection Act or "BIA") and the Federal Railroad
27 Safety Act, 49 U.S.C. §§ 20101 et seq. ("FRSA"), along with their implementing regulations – set
28 forth various safety requirements and other technical standards that railroads must meet on a

1 national level.

2 UPRR primarily claims that plaintiff's FELA claim is precluded under the LIA and/or the
3 FRSA, because plaintiff does not allege, and cannot allege, that the LIA, the FRSA, or their
4 corresponding regulations require either (1) the installation of seat belts in locomotives or (2)
5 warnings regarding "rough riding locomotives."  Essentially, UPRR contends that plaintiff may
6 not, by virtue of a general negligence claim under the FELA, require a railroad to comply with
7 additional requirements or safety standards concerning locomotives not mandated by the LIA or
8 FRSA.  Additionally, UPRR argues that plaintiff has pled conclusory and insufficient factual
9 allegations in support of his FELA claim.

10 <u>Preclusion by the LIA</u>

11 The court first considers the potential preclusive effect of the LIA, because the LIA
12 appears to be more directly applicable to plaintiff's alleged bases of liability, which involve
13 purported design and warning defects concerning locomotives.

14 The LIA provides, in part, that:

> A railroad carrier may use or allow to be used a locomotive or
> tender on its railroad line only when the locomotive or tender and
> its parts and appurtenances – (1) are in proper condition and safe to
> operate without unnecessary danger of personal injury; (2) have
> been inspected as required under this chapter and regulations
> prescribed by the Secretary of Transportation under this chapter;
> and (3) can withstand every test prescribed by the Secretary under
> this chapter.

20 49 U.S.C. § 20701.  Although the LIA's text "says nothing about its preemptive effect," the Ninth
21 Circuit Court of Appeals has nonetheless held that the LIA preempts "any state action that would
22 affect," and "every state effort to establish independent standards" for, "the design, construction,
23 and material" of "every part of the locomotive and tender and of all appurtenances," whether such
24 standards or requirements are imposed by state statutory, regulatory, or common law.  <u>Law v.
25 General Motors Corp.</u>, 114 F.3d 908, 910-11, 913 (9th Cir. 1997) (<u>citing</u> <u>Napier v. Atlantic Coast
26 Line R.R.</u>, 272 U.S. 605 (1926)).

27 In <u>Law</u>, railroad workers sued railroad equipment manufacturers alleging that the
28 workers' hearing was severely damaged by excessive noise from locomotive brakes and engines.

5

1  Law, 114 F.3d at 909.  The railroad workers asserted various state law claims, including claims

2  for negligence and failure to warn, contending that the manufacturers had defectively designed

3  the locomotive brakes and engines, failed to properly insulate the railroad workers' work stations,

4  and failed to provide warnings about any risk of hearing loss.  Id.

5        In finding that the LIA preempted the railroad workers' state common law claims, the

6  Ninth Circuit explained:

> It has long been settled that Congress intended federal law to occupy the field of locomotive equipment and safety, particularly as it relates to injuries suffered by railroad workers in the course of their employment…
>
> This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines.  Locomotives are designed to travel long distances, with most railroad routes wending through interstate commerce.  The virtue of uniform national regulation is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state…Any state law that undermines this regime is preempted by the [LIA].
>
> Appellants' common-law claims fall squarely within this preempted field.  Apart from compensating victims of accidents for their injuries, the purpose of tort liability is to induce defendants to conform their conduct to a standard of care established by the state…If each state were to adopt different liability-triggering standards, manufacturers would have to sell locomotives and cars whose equipment could be changed as they crossed state lines, or adhere to the standard set by the most stringent state.  Either way, Congress's goal of uniform, federal railroad regulation would be undermined.

20  Law, 114 F.3d at 910-11.  The Ninth Circuit stated that its prior decision in Marshall v.

21  Burlington Northern, Inc., 720 F.2d 1149 (9th Cir. 1983) confirmed its conclusion:

> In *Marshall*, the widow of a motorist killed in a collision with a train brought a wrongful death action against the railroad, alleging that the locomotive's lights inadequately warned of its approach.  At the time of the accident, the train's warning systems were in full compliance with [LIA] standards.  We reversed the jury's negligence verdict, holding that the state may not impose liability for failure to install a part or attachment of a locomotive if it is within the scope of the authority delegated to the Secretary to prescribe the same part or attachment.

27  Law, 114 F.3d at 911 (internal quotation marks and citations omitted).  The Ninth Circuit noted

28  that the Secretary of Transportation no doubt has the authority to regulate design requirements for

locomotives, including locomotive brakes, engines, body structures, as well as the noise resulting from certain locomotive parts. Id. The court also rejected the railroad workers' argument that "locomotive manufacturers could escape liability [under state law] without deviating from federal standards by requiring workers to wear protective headgear or posting warnings," reasoning that:

> [E]ach of these remedies implicates the [LIA] as well. The Federal Railroad Administration, in consultation with the Occupational Safety and Health Administration, has exclusive authority to determine whether locomotive operators may wear protective headgear; a decision wisely reserved to an expert federal agency qualified to weigh the value of safety equipment against alertness of employees to rail transportation hazards affecting the employees, passengers and the general public along the right of way. As for warning requirements, these too are within the scope of the Secretary's authority—an authority which the Secretary has often invoked. See, e.g., 49 C.F.R. §§ 210.27(d)(3) (labeling requirement for wayside noise levels); 215.9(a)(3) (warning posted on defective freight cars); 229.85 (warning notices for high voltage equipment); 229.113 (warning notices for steam generators).

Id. As such, the Ninth Circuit concluded that the railroad workers' state law claims were preempted. Id.

Significantly, in a relatively recent decision, the United States Supreme Court strongly reaffirmed its prior Napier decision, on which the Ninth Circuit in Law placed substantial reliance. See Kurns v. Railroad Friction Prods. Corp., 132 S. Ct. 1261 (2012) (involving state law tort claims of defective design and failure to warn based on the presence of asbestos in certain locomotive parts). In finding that the LIA preempted the railroad employees' state law claims, the Supreme Court reasoned:

> In *Napier*, the Court held that Congress, in enacting the LIA, manifested the intention to occupy the entire field of regulating locomotive equipment…Petitioners' common-law claims for defective design and failure to warn are aimed at the equipment of locomotives. Because those claims are directed to the same subject as the LIA, *Napier* dictates that they fall within the pre-empted field.

Kurns, 132 S. Ct. at 1267-68 (internal citations and quotation marks omitted).[2]

---

[2] In his opposition, plaintiff cites to Justice Sotomayor's partial dissent in Kurns, which is not binding, applicable law. (ECF No. 10.)

In this case, plaintiff's complaint does not allege that the LIA, the FRSA, and/or their implementing regulations actually require the installation of seatbelts in locomotives[3] or the provision of warnings regarding the hazards of rough riding locomotives.[4]  UPRR likewise suggests that it is not aware of any such regulatory requirements.  Instead, plaintiff's FELA claim appears to rely on general principles of negligence, contending that UPRR failed to use reasonable care in furnishing plaintiff with a safe place to work by neglecting to provide the seat belts and warnings.

Obviously, if plaintiff had brought similar negligence-type claims under state law, it would have been a simple matter to conclude that they are preempted by the LIA in light of the United States Supreme Court's decision in Kurns and the Ninth Circuit's decision in Law.  Under the LIA, the Secretary of Transportation no doubt has the authority to require the installation of seat belts in locomotives and the provision of warnings concerning rough riding locomotives, but has not done so.  Therefore, any attempt to impose such additional requirements or standards by virtue of a state law claim would be preempted by the LIA.

However, in this case, the question is slightly more complicated, because plaintiff is proceeding under a federal statute – the FELA – and thus, traditional preemption principles with respect to state laws do not apply.  Indeed, in Law, in response to the railroad workers' argument that the preemption of state law claims against locomotive manufacturers would leave railroad workers without a remedy for injuries, the Ninth Circuit noted that railroad workers potentially have an available remedy against their employers under the FELA for injuries caused by their employers' negligence.  Law, 114 F.3d at 912.  Thus, Law does not directly address the question of whether the LIA would preclude plaintiff's claim brought under the federal FELA.  Nevertheless, for the reasons discussed below, the court ultimately concludes that plaintiff's FELA claim is precluded by the LIA.

---

[3] One regulation provides that "[c]ab seats shall be securely mounted and braced," but does not require the installation of seat belts.  49 C.F.R. § 229.119(a).

[4] Several regulations address safety requirements with respect to the suspension systems of locomotives, see 49 C.F.R. §§ 229.63-229.75, but no regulation appears to require warnings regarding "rough riding."

1    In Law, the Ninth Circuit described the FELA as:

> a comprehensive mechanism for vindicating the rights of railroad workers – a mechanism that *doesn't undermine the [LIA's] goal of uniformity…* Appellants also claim that FELA remedies are inadequate because they can only be asserted against railroad operators, not manufacturers, and will therefore do nothing to deter manufacturers from designing substandard railroad equipment. This ignores the realities of the business world, and underestimates the market's ability to encourage manufacturers to produce safe products. Because railroad operators are liable for any injuries suffered by their employees, they would not buy locomotives, cars and other equipment that *fall short of [LIA] standards*. Doing so would not only risk FELA damage awards, but would subject railroad operators to fines of up to $20,000 per day for every violation. *See* 49 U.S.C. § 21302. Every railroad operator includes these potential penalties and liability costs in the bottom-line price when deciding whether to purchase from a particular manufacturer. Because locomotives that *don't comply with the [LIA]* are not, in the end, cheaper than ones that do, there is no market for them. Locomotive manufacturers already have every incentive to *comply with federal standards*.

Law, 114 F.3d at 912 (emphasis added). This language, combined with the Ninth Circuit's recognition of the virtue of the fact that "locomotive companies need only concern themselves with *one set of equipment regulations*" strongly suggests that FELA plaintiffs likewise cannot attempt to impose requirements or standards concerning locomotive design and warnings in addition to the LIA regulations. Id. at 910 (emphasis added). That interpretation is also consistent with the United States Supreme Court's reference in Kurns to the "broad scope of the authority" that the LIA conferred on the Secretary of Transportation over the design, construction, and material of locomotives. Kurns, 132 S. Ct. at 1266.

Some district courts in the Ninth Circuit have expressly found that if a negligence claim would be preempted when brought under state law, it would likewise be precluded when brought under the FELA. See Allenbaugh v. BNSF Railway Co., 832 F. Supp. 2d 1260, 1266 (E.D. Wash. 2011) ("If a cause of action would be preempted by the FRSA if brought under state law, the cause is likewise precluded by the FRSA if it is brought under the FELA."); Abromeit v. Montana Rail Link, Inc., 2010 WL 3724425, at *4 n.2 (D. Mont. Sept. 15, 2010) (accord; further explaining that "[p]reemption analysis only applies to conflicts between federal and state law, but courts have concluded that FELA claims may be precluded under a similar analysis, based on the

[FRSA's] policy of ensuring uniformity in railway safety.")[5]; but see Powell v. Union Pacific Railroad Co., 2013 WL 1857893, at *2 (E.D. Cal. May 2, 2013) (finding that because the standard of care in a FELA claim "is one of federal law, the FRSA's concern of national uniformity in railroad safety regulation is not undermined by FELA negligence claims, which develop federal law that applies across the nation.").

After careful consideration of the above authorities, the court is persuaded that plaintiff's FELA claim is precluded by the LIA. To hold that the LIA would preclude plaintiff's claims when cast as state law claims, but not when cast as FELA claims, makes little sense and would in effect destroy the uniformity of locomotive regulation under the LIA regulations. For example, it is certainly plausible that FELA plaintiffs could win FELA negligence claims based on a failure to equip locomotives with seat belts in some federal districts or circuits, but lose such claims in other federal districts or circuits. Unless the United States Supreme Court definitively rules on the issue, railroads would face conflicting seat belt requirements in different parts of the country. That same scenario could repeat itself through lawsuits concerning many other locomotive parts or safety requirements, resulting in a meshwork of inconsistent requirements and standards across the country. Although such a situation would be brought about by virtue of federal FELA claims as opposed to state law claims, and thus would not technically implicate federal preemption concerns, the practical effect on the uniformity of regulation would be the same. Railroads would no longer be able to reference a single set of regulations with respect to locomotive design and safety requirements.

Moreover, permitting *de facto* regulation through individual FELA claims "would transfer the regulatory locus" from the Secretary of Transportation and the federal administrative scheme to federal courts (or state courts) adjudicating FELA claims, even though the Secretary

---

[5] The fact these district court cases in the Ninth Circuit involved the FRSA, as opposed to the LIA, appears immaterial. Both the FRSA and the LIA have a policy of promoting national uniformity in railroad regulation. Although, as discussed below, the scope of preemption under the LIA is actually broader than under the FRSA, once it is found that a state law claim is in fact preempted by either statute, there is no reason to believe that the "state law claim preemption translates to FELA claim preclusion" principle recognized in these cases would not apply equally in both the LIA and FRSA contexts.

1 presumably has significantly more subject matter expertise. Law, 114 F.3d at 911-12. Such a
2 shift also appears inconsistent with the United States Supreme Court's admonition in Napier that
3 if protections under the LIA rules and regulations are deemed inadequate, application for relief
4 should be made to the federal agency administering the regulations. Napier, 272 U.S. at 613.

5      To its credit, UPRR candidly acknowledges the existence of district court opinions in the
6 Ninth Circuit, which have found that certain *FRSA* regulations do not preclude FELA claims. See
7 Allenbaugh v. BNSF Railway Co., 832 F. Supp. 2d 1260 (E.D. Wash. 2011) (involving railroad
8 ballast regulation); Abromeit v. Montana Rail Link, Inc., 2010 WL 3724425 (D. Mont. Sept. 15,
9 2010) (involving railroad ballast regulation); Powell v. Union Pacific Railroad Co., 2013 WL
10 1857893, at *2 (E.D. Cal. May 2, 2013) (involving railroad switch inspections). However, the
11 court ultimately finds those cases to be inapposite here, because LIA preemption of state law
12 claims (and therefore by extension, LIA preclusion of FELA claims) is much broader than FRSA
13 preemption/preclusion.

14      As noted above, the LIA occupies the entire field of regulating locomotive equipment.
15 Kurns, 132 S. Ct. at 1267. The FRSA more generally governs railway safety, having been
16 enacted with a purpose to "promote safety in every area of railroad operations and reduce
17 railroad-related accidents and incidents." 49 U.S.C. § 20101. The FRSA instead has an express
18 preemption provision, which provides that "[l]aws, regulations, and orders related to railroad
19 safety…shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). It further
20 provides, in part, that "[a] State may adopt or continue in force a law, regulation, or order related
21 to railroad safety or security until the Secretary of Transportation (with respect to railroad safety
22 matters)…prescribes a regulation or issues an order covering the subject matter of the State
23 requirement." Id. § 20106(a)(2). Thus, by contrast to the LIA, which occupies the field of
24 locomotive equipment and safety, the FRSA does not occupy the field of general railroad safety,
25 but preempts only those state laws where the federal government has acted with respect to the
26 same subject matter, and where the FRSA regulation substantially subsumes the subject matter of
27 the state law. Law, 114 F.3d at 910; Marshall v. Burlington Northern, Inc., 720 F.2d 1149, 1153
28 (9th Cir. 1983); Powell v. Union Pacific Railroad Co., 864 F. Supp. 2d 949, 961 (E.D. Cal. 2012).

11

Whether a specific FRSA regulation has substantially subsumed the subject matter of a state law or state law claim can be a more complex matter, and courts have sometimes inquired as to the different purposes behind the state and federal laws in order to make that determination. Powell, 864 F. Supp. 2d at 962. But in the LIA context, the United States Supreme Court has emphasized that LIA field preemption applies regardless of any difference in purpose between the federal and state law. "Because the States' requirements operated upon the same physical elements as the LIA, the Court held that the state laws, however commendable or however different their purpose, fell within the LIA's pre-empted field." Kurns, 132 S. Ct. at 1266 (citing its prior Napier decision). Because the FRSA's express preemption provision has further been held to have no effect on the LIA's broader field preemption/preclusion, see Law, 114 F.3d at 913 n.4, the above-mentioned cases involving the interaction of *FRSA* regulations with the FELA do not alter the court's analysis.

In light of the above, the court concludes that plaintiff cannot state a FELA claim based on UPRR's alleged failure to (1) install seat belts in its locomotives and (2) warn plaintiff regarding the purported hazards of rough riding locomotives. These additional safety requirements or standards are not mandated by the LIA, and plaintiff's FELA claim based on such additional requirements or standards is thus precluded by the LIA and subject to dismissal.

UPRR's Other Arguments

In light of the court's conclusion that plaintiff's FELA claim is precluded by the LIA, the court need not reach the question of whether it is also precluded by the FRSA. The court also finds it unnecessary to address UPRR's alternative argument that plaintiff's FELA claim is insufficiently pled in other respects.

Leave to Amend

Ordinarily, the court would be inclined to grant plaintiff leave to amend if it appears possible that plaintiff could correct any identified pleading deficiencies. However, for the reasons discussed above, plaintiff's above-mentioned claims are legally precluded, and cannot be cured by improved pleading or the addition of more detailed facts.

////

In light of plaintiff's *pro se* status, the court also made inquiries at the hearing as to whether plaintiff potentially had a factual basis to allege a different type of FELA claim against UPRR. For example, the court asked plaintiff whether he contended that UPRR violated any specific federal regulation imposed by the LIA or the FRSA. Although plaintiff initially indicated that he believed UPRR had violated the LIA, he admitted in subsequent questioning that that belief was not based on his knowledge of any facts that UPRR violated a particular LIA regulation, but instead on the "rough riding" nature of LIA's locomotives generally and UPRR's failure to provide locomotive seating comparable to that in the trucking industry. Furthermore, even though plaintiff suggested in conclusory fashion that UPRR inspected, but did not properly repair, its locomotives, plaintiff was unable to articulate any facts concerning which parts were not repaired or improperly repaired, particular incidents or accidents that arose from UPRR's purported negligence in that regard, etc. Instead, plaintiff just broadly referred to his 40-plus years career in riding "rough riding locomotives" and the general toll that it took on his body.

Accordingly, the court concludes that plaintiff does not have a plausible factual basis to state a claim under the FELA, and that granting leave to amend would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

CONCLUSION

Although the court is sympathetic to the injuries plaintiff may have suffered, and in no way wishes to minimize their potential impact on plaintiff, the court concludes, in light of the above, that plaintiff's FELA claim is legally precluded and must be dismissed.

Accordingly, IT IS HEREBY ORDERED that:

1. UPRR's motion to dismiss plaintiff's complaint (ECF No. 8) is granted.
2. The action is dismissed with prejudice.
3. The Clerk of Court shall vacate all dates and close this case.

IT IS SO ORDERED.

Dated: May 14, 2014

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE